DAVID D. HARVEY, *et al.*, Respondents, *vs.* THE HEIRS OF ISAAC SULLENS, *et al.*, Appellants.

1. *Wills—Contest, touching—Right to open and close.*—In a statutory proceeding to contest a will (Wagn. Stat. 1368, § 29) the *onus probandi* is upon the defendant, and he is therefore entitled to open and close. But the right to open and close generally rests very much in the sound discretion of the court; and an error upon this point will not warrant a reversal, unless defendant is shown to have suffered injury in consequence.

2. *Wills—Capacity necessary to render testator competent.*—To render a testator competent to make his will, the law does not require any particular degree of understanding. He is simply required to be of sound mind to manage his own affairs, and to know intelligently what disposition he is making of them.

*Appeal from St. Louis Circuit Court.*

*Geo. P. Strong,* for Appellants.

I. Defendants were entitled to open and close. (Cravens vs. Faulconer, 28 Mo., 19; Tingley vs. Cowgill, 48 Mo. 291; Handley vs. Stacey, 1 Fost. & Fin., 674.)

II. Physical inability to transact business constitutes no disqualification for making a will. There must be a want of mental capacity, not to "transact," but to comprehend or understand, ordinary business. (1 W'ms Ex., 36; Stanell vs. Kenan, 33 Ga., 56; Stewart's Ex. vs. Lispenard, 26 Wend., 255.)

*T. G. C. Davis,* for Respondents.

WAGNER, Judge, delivered the opinion of the court.

Plaintiffs filed their petition in the Circuit Court, for the purpose of contesting the will of Elizabeth Sip, deceased, which had previously been admitted to probate. By the will all the testatrix's real estate, which comprised the greater portion of her property, was devised to the defendant, Sullens, who was to her an entire stranger in blood.

The petition alleged that the paper writing produced was not the last will and testament of Mrs. Sip; that it was obtained by undue influence, and that when she made the same she was not of sound and disposing mind.

These allegations were all denied in the answer, and it was averred that the writing was the will of Mrs. Sip. There was a verdict for the plaintiffs. At the trial the defendants requested, that they should be allowed to open and close the case to the jury; but this request was denied by the court, and the plaintiffs were granted the privilege of opening and closing; and this ruling is alleged to be erroneous. Upon the question as to who should have the opening and closing of the case to the jury, there has been a conflict in the adjudications in this State as well as in others. The real issue in cases of this description is, whether the writing produced is the will of the testator or testatrix, or- not, and the *onus* or burden of proof is cast upon the defendants who seek to establish the will. And I think, therefore, the better doctrine is, that they are entitled to open and close. It was so held in Cravens vs. Faulconer, (28 Mo., 19) where it was declared, that, as the burden of proof rested upon the defendants, they should be allowed to open and close the case to the jury. The correctness of this decision was doubted in Farrel's Adm. vs. Brennan's Adm. (32 Mo., 328), and it was there intimated that the plaintiffs, or the party attacking the will, should be allowed to open and close; but it was said that an error in respect to that matter would furnish no ground for a new trial, unless the party had been materially injured in consequence of it. The point was again presented to this court in Tingley vs. Cowgill, (48 Mo., 219) where we approved of the doctrine laid down in Cravens vs. Faulconer, and held that when the issue is made up, the defendants, endeavoring to establish, or hold under, the will, affirm that the paper writing is the last will and testament of the testator or testatrix; that they have the affirmation of the issue to be tried, and they are then entitled to open and conclude. The right to open and close generally rests very much in the sound discretion of the court trying the cause, and an error committed in that regard will not be sufficient to reverse a case, unless it is plainly made to appear that injury has resulted therefrom. Although we are clearly of the opinion that the court

ruled incorrectly, and that the opening and conclusion should have been awarded to the defendants, still we will not reverse for that reason, when it is not shown that they were injured thereby.

It is complained, that the court erred in submitting issues to the jury. The following issues were framed and submitted: 1st. Whether the defendant, Sullens, procured and induced Elizabeth Sip, by fraud, to put her mark to the paper writing, propounded by him as her will; 2nd. whether she was, when she put her mark to the paper writing, of feeble and unsound mind, and incapable of making a will, by reason of her infirmities and feebleness of mind; 3rd. whether Sullens procured or induced her to put her mark to the said paper writing, by undue influence exercised by him on her mind and will; and 4th. whether the paper writing was her will.

The statute (2 Wagn. Stat. 1368, § 29) says, that upon a contest of a will in the Circuit Court, an issue shall be made up whether the writing produced was the will of the testator or not. This statutory issue was made up and presented, and others besides, but they merely stated the elements and ingredients that were contained in it, in different forms, and they furnish no just ground of complaint.

This case was previously in this court (46 Mo., 147) and a summary of the facts are there given. As disclosed by the evidence, they are essentially the same now as they were then. The instructions given for the plaintiffs are the same as they were in the case when it was here before, with the exception of the first in the series—which was given upon the second trial for the first time. That instruction told the jury, that if they believe from the evidence, that a confidential relation existed between Isaac Sullens and Elizabeth Sip for years before the paper propounded as her will was signed with her mark, and that by reason of said confidential relation the said Sullens had acquired influence over the mind of the said Elizabeth, and that the said confidence continued up to the time she made her mark to the said paper, and that the

said paper was written by the said Sullens, and gives to him all the real estate of which she was the owner at the time of her death, the law presumes that the said paper was obtained by the said Sullens from the said Sip by undue influence, and this presumption of law cannot be removed except by clear and satisfactory evidence, that the purpose to give the said real estate to the said Sullens, arose, sprung and' originated in the free and uninfluenced mind of the said Sip ; and the burden of proof in this respect, is upon the defendants. The instruction is not objected to because it announces any incorrect principle of law, but it is contended that there was no evidence justifying it. We think otherwise. There was evidence showing that Sullens had formerly transacted business for Mrs. Sip, and that the most intimate and confidential relations existed between them, continuing down to the day of her death. The evidence was sufficient to take the case to the jury, and they might well ·infer therefrom that such a state of facts existed.

- But the main point, which is alleged for error, is the action of the court in giving plaintiffs' fourth instruction. That instructed the jury as follows : " If you believe from the evidence in this cause, that Elizabeth Sip, deceased, was, at the time of putting her mark to the paper writing propounded by the defendants, old and infirm in body, and feeble and childish in mind, and so incapable of transacting her ordinary business, then she had not sufficient capacity to make a will."

It is insisted that this instruction established an erroneous standard of capacity to make a will. When the case was here on a former occasion, the same instruction was in it, and we then declared as a proposition of law it was not correct, but that, under all the circumstances surrounding the case, it was well enough. If a person is of unsound mind, and incapable of managing his affairs, then he surely does not possess capacity sufficient to make a will, and this was probably the idea in the mind of the draftsman of the instruction. If so, he was unhappy in expressing it.

Many cases have been cited to show, that a person of the very weakest understanding is capable of making a will. The leading case, and the one most relied on, is Stewart's Ex. vs. Lispenard, (26 Wend., 255) where it was held, that idiots, lunatics, and persons *non compos mentis*, were disabled from disposing of their property by will, but that every person not embraced within either of the above classes, of lawful age, and not under coverture, was competent to make a will, let his understanding be ever so weak ; and that courts, in passing upon the validity of a will, would not measure the understanding of the testator, if he was not totally deprived of reason. Whether he was wise or unwise, he was the lawful disposer of his property, and his will would stand as a reason for his actions. But in the great will case of Delafield vs. Parish, (25 N. Y., 9) Stewart vs. Lispenard is directly overruled. In speaking of that case, Judge Daviess, who delivered the opinion of the court, says, " The case of Stewart vs. Lispenard has challenged much discussion in this State, and has not been regarded with favor by the bench or the bar. The circumstances, under which it was heard and decided on the part of the court, are such as to carry with it little if any weight or authority. In that case, the will of a person, conceded to be but a slight remove in intellectual power above an idiot, was, by a decree of that court, directed to be admitted to probate. The argument of the case was commenced in that court on the 21st day of December, 1841, and concluded on the 24th. On the 31st of that month, the last day of the official term of one-fourth of the senate, the case came up for decision, and was decided, with little opportunity for an examination of facts, which the report says were contained in a voluminous case of upwards of 300 pages, and without the benefit of any written opinion, except that of Senator Livingston (and which has since been published), or any suggestions even from the judges of the Supreme Court. The only justice of that court being present by courtesy to form a quorum, stating that he had no written opinion to present, not having leisure, since the argument was closed, to digest the facts of

the case, or even to read the numerous authorities which had been cited, amounting to nearly or quite a hundred cases, and he declined to deliver an opinion. Senator Verplank orally stated his reasons for reversal, and thereupon the court, composed exclusively of senators, by a vote of 12 to 6, reversed the decree of the chancellor, which affirmed the judgment of the circuit judge, who affirmed the decree of the surrogate, refusing to admit the will to probate, and the court, by a vote of 11 to 8, made a decree directing the will to be admitted to probate. After the breaking up of the court, the learned opinions of two of the senators, who voted to reverse the decree of the three courts below, were published and appear in our reports; but they must be regarded as containing the views of the distinguished senators, and not those of the court. We fully concur in what is said by Mr. Justice Clarke in Thompson vs. Thompson, (21 Barb., 116) that the opinions of those learned and distinguished senators in this case are not binding authority. It is not an inappropriate commentary upon the case, to add that subsequent to the decision of the court of errors in an action of ejectment in the superior court of New York, before Chief Justice Oakley and a jury, the jury under instructions from the court found that this same Alice Lispenard was an idiot, and had no testamentary capacity, thus annulling this same will as to real estate. This verdict was rendered after a protracted investigation, and the examination of a large number of witnesses."

The cases are so numerous on the subject of testamentary capacity, that we will not attempt to review them. A few, however, which it is deemed contain the soundest views, will be noticed. Chancellor Walworth, in Clark vs. Fisher, (1 Paige, 171) said, "The general principles, in relation to the capacity of a person to make a will, are well understood. He must be of sound and discerning mind and memory, so as to be capable of making a testamentary disposition of his property with sense and judgment, in reference to the situation and amount of such property, and to the relative claims of different persons who are, or might be, the objects of his

bounty." In Shropshire vs. Reno, (5 J. J. Marsh. 91) Robertson, Ch. J., observed, that the facts in that case led the court to the opinion, "that the testator had not a disposing mind, or that, if he ever had, it was not in a disposing state. He was not superannuated, nor was he absolutely *stultus* or *fatuus;* but all the facts combined tend to show that he had not a sound memory, nor sufficient mind, nor a mind in a proper state for disposing of his estate with reason, or according to any fixed judgment or settled purpose of his own. This we consider the true test, established not only by philosophy but by law."

In Harwood vs. Baker, (3 Moore Priv. C. R., 282–290) Erskine, J., observes, " But their lordships are of opinion that in order to constitute a sound disposing mind, a testator must not only be able to understand that he is, by his will, giving the whole of his property to one object of his regard, but that he must also have capacity to comprehend the extent of his property, and the nature of the claims of others, whom, by his will, he is excluding from all participation in that property."

In Den vs. Johnson, (2 Southard 454) the Chief Justice, in charging the jury on this subject, said, " that a disposing mind and memory is a mind and memory which has the capacity of recollecting, discerning and feeling the relations, connections and obligations of family and blood; that though it has been sometimes said, as had been stated from the books, that if one could correctly tell his name, say the day of the week, or even ask for food, it is a sufficient evidence of a disposing mind; yet such sayings, though they show that wills are not lightly to be set aside on suggestions of incapacity, can and ought to have but little weight with rational men, investigating the truth upon their oaths; that if, upon the whole, they should be of the opinion that the mental powers of the testatrix were so far enfeebled and broken, as that she could not make a discreet disposition of her affairs herself, and the will in question was devised by other persons, and only assented to by her, upon being asked, without the power

of understanding it, then they ought to find for the plaintiff," that is, that it was not her will.

Aside from the instruction which is so strongly objected to, the court gave several others, which presented the questions of undue influence and testamentary capacity with unquestionable correctness. Even the defendants, at their own instance, asked and obtained an instruction, which contains the very language now complained of. It was in the following words: "The court instructs the jury that, even if they find from the evidence that Mr. Sullens wrote the will, and requested those in the room to retire while it was read, and that it was read to her, when no one but Dr. Williams and Mr. Sullens were present with Mrs. Sip, and that Dr. Williams was a relation of Mr. Sullens' wife, and that Mr. Sullens was the principal devisee, yet, if the jury believe from the evidence, that the will was prepared by Mr. Sullens at her request, that she desired the contents of it to be kept a secret, and that she desired and intended, when she signed the will, to dispose of her property as it is there disposed of, and that, in making such disposition of her property, she was carrying out her own will and desires, and was not induced thereto by any fraud, deceit, or undue influence of said Sullens, or of others in his interest, then the jury will find that said paper writing is the last will and testament of Mrs. Elizabeth Sip, and they will find the issues for the defendants, unless they further find from the evidence, that Mrs. Sip, at the time of putting her mark to said paper, was old and infirm of body, and feeble and childish in mind, and incapable of transacting her ordinary business."

The general rule undoubtedly is, that a party cannot complain of his own instructions, and here we find what is considered objectionable embodied in one of his own requests. But the third instruction given for the defendant we think so clearly explains and modifies the ones above referred to, and so intelligently expresses what constitutes testable capacity, that the case is shorn of all difficulty. It declares, "The court instructs the jury that if they believe from the evidence,

that Mrs. Sip, at the time of signing her name or mark to the paper writing propounded as her last will and testament, had sufficient understanding and intelligence to understand her ordinary business, and to understand what disposition she was making of her property, then she had sufficient capacity to make a will, however feeble and infirm in body or health she might have been.''

A lunatic cannot make a will, and where a person is regarded as a fit subject of a commission of lunacy, he is *prima facie* incompetent to make a will. In Sherwood vs. Sanderson, (19 Ves., 280) Lord Eldon thus states the rule: "It must appear that the object of the commission is of unsound mind, and incapable of managing his affairs." The converse of this proposition is equally true; if a person is of sound mind, and capable of managing his affairs, then he may make a will. The law does not require any particular degree of understanding, but the person must have sufficient capacity to intelligently know what disposition he is making of his property.

The instructions, when taken together, submitted the case fairly enough, and could not have misled the jury. The judgment should be affirmed. All the judges concur.