JAMES P. NEWELL, Public Administrator, in charge
of the Estate of JOHN O'MALLEY, Respondent, v.
St. LOUIS TRANSFER COMPANY, a Corpora-
tion, Appellant.

St. Louis Court of Appeals.   Opinion Filed December 7, 1920.

1. **DEATH BY WRONGFUL ACT:** Negligence: Evidence: No Eye-
   witnesses: Slight Evidence Required to Go to Jury.   In actions to
   recover damages resulting from wrongful death, where there are
   no eyewitnesses, the courts are more liberal in allowing the ques-
   tions of the negligence of the defendant and of the contributory
   negligence of the plaintiff to go to the jury upon slight evidence.

2. ———: ———: ———: ———: **Presumptions.**   Likewise, where
   no one saw the accident, and there is no direct evidence of the
   circumstances, it may be presumed that the deceased was prompted
   by the instinct of self-preservation, and at the time exercised due
   care for his safety.

3. **MASTER AND SERVANT:** Negligence: Contributory Negligence:
   No Eyewitnesses: Question for the Jury.   In an action to recover
   damages resulting from wrongful death of an employee who came
   to his death by falling down an elevator shaft maintained by de-
   fendant, evidence reviewed and *held* that deceased was not guilty
   of contributory negligence as a matter of law.

4. ———: ———: **Master Required to use Ordinary Care to Furnish
   Reasonably Safe Place of Work.**   It is the master's duty to use
   ordinary care to furnish an employee a reasonably safe place to
   work.

5. ———: ———: **Maintaining Unguarded Elevator Shaft: Negli-
   gence and Contributory Negligence Question for the Jury.**   In an
   action to recover damages resulting from wrongful death caused
   by falling down an elevator shaft maintained by defendant, where
   the condition of the elevator with an aperture defectively guarded
   was a matter of permanent construction, and was maintained in
   that condition for sufficient time to authorize a finding that de-
   fendant either knew, or by the exercise of ordinary care should
   have known, the condition thereof, *held* that the question of
   whether defendant was guilty of negligence in maintaining this
   elevator, with this open space or aperture guarded in the man-
   ner in which it was guarded by the simple iron bar, was a ques-

tion for the jury. Likewise, whether or not the deceased was in the exercise of proper care for his own safety at the time was also a question for the jury.

6. **DEATH BY WRONGFUL ACT: Beneficiaries: Petition Naming Father: Sufficiency.** In an action by an administrator to recover damages resulting from wrongful death of an unmarried adult under sections 5426, 5427, Revised Statutes 1909, it was not necessary to name deceased's brothers and sisters in the petition as beneficiaries where he had contributed monthly amounts to his father's support but had sent no funds to the sisters or brothers, although the father used the amount sent to him for the support of himself and the three sisters who lived with him, as there was no obligation on the part of deceased to contribute to the support of his sisters, and they suffered no direct pecuniary loss by reason of his death.

7. ————: ————: ————: **Failure to Name Deceased's Brothers and Sisters Harmless: Petition Sufficient After Judgment.** In an action to recover damages for wrongful death where deceased's father was named in the petition as sole beneficiary, he being the only person who suffered a pecuniary loss though the sisters received an indirect benefit through the contributions of the father, but no amounts were contributed to them directly by the deceased, *held* the failure to name the sisters was, at most, harmless error, and could not affect the validity of the judgment, and the petition, after judgment, was sufficient to state a cause of action.

8. **DEPOSITIONS: Objection to Whole Deposition: Part Competent: Objection Insufficient.** Where there was evidence in a deposition which was concededly competent, the admission of the deposition as against an objection which went to the whole deposition was proper, even though some of the evidence in the deposition was incompetent.

9. **TRIAL PRACTICE: Admission of Evidence Harmless in View of Instruction.** In an action for damages resulting from wrongful death in which deceased's father was named as sole beneficiary in the petition, the admission of testimony that deceased left surviving him brothers and sisters was harmless where the evidence showed that the brothers and sisters did not suffer any pecuniary loss by reason of the death, in view of the instruction on the measure of damage which permitted a recovery only for such necessary injury as the father suffered from the death.

10. **DEATH BY WRONGFUL ACT: Death of Unmarried Adult: Damages: Instructions: Deceased's Brothers and Sisters Suffering no Pecuniary Loss: Not Entitled to Damages.** In an action by

an administrator for damages resulting from wrongful death of an unmarried adult, where deceased's father was named as sole beneficiary, and the evidence showed that brothers and sisters of deceased suffered no pecuniary loss by reason of his death, an instruction on the measure of damages which told the jury to assess the damages at such sum as they believe from the evidence will be fair and just with reference to the necessary injury resulting from the death of deceased to his father, omitting to take into account the brothers and sisters of the deceased, was proper.

11. **DAMAGES: Excessive Damages: Morality Tables not Conclusive.** In an action to recover damages resulting from wrongful death, the jury are not required to confine their verdict to such sum as may be ascertained by taking into account the amount of contributions made monthly, based on life expectancy of the beneficiary, the jury not being bound by the life tables showing the expectancy.

12. ————: ————: **Beneficiary 61 Years Old: Verdict of $5000 Not Excessive.** In an action by an administrator for the death of an unmarried adult under sections 5426, 5427, Revised Statutes 1909, where the beneficiary, the father of the deceased, was sixty-one years old, and, under the life tables had an expectancy of only thirteen years, and deceased was contributing to his father the sum of $25 to $40 per month, a verdict of $5000 *held* not excessive where the deceased was a strong, healthy man who showed disposition to increase his contributions to his father's support, as he had done so for the month previous to his death, and it was not unreasonable for the jury to assume that such amounts would have been increased in the future had he lived.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. George H. Shields*, Judge.

AFFIRMED.

*Guy A. Thompson* and *Marvin E. Boisseau*, for appellant.

(1) The court erred in refusing to give defendant's instruction in the nature of a demurrer to the evidence offered at the close of the case. (a) The evidence shows that deceased's death was not caused by any negligence

of defendant. Buesching v. St. Louis Gaslight Co., 73 Mo. 219; Stottler v. Railroad, 181 Mo. App. 642; Dyrez v. Railroad, 238 Mo. 33; McGahan v. St. Louis Transit Co., 201 Mo. 500; Battles v. Railway Co., 178 Mo. App. 596; Mockowik v. Railroad, 196 Mo. 550. (b) This suit cannot be mantained under the petition and evidence. R. S. 1909, secs. 5425, 5427; Johnson v. Dixie Mining and Dev. Co., 171 Mo. App. 134; Same Case, 187 S. W. 1; Troll v. Laclede Gaslight Co., 182 Mo. App. 600; Kirk v. Wabash Ry. Co., 265 Mo. 341; Bright v. Thacher, 215 S. W. 788; McCulloch v. Powell Lumber Co., 216 S. W. 803; Swift v. Fire Ins. Co., 216 S. W. 935, 937; Hegberg, Admr., v. Railroad, 164 Mo. App. 514; Bagley v. City of St. Louis, 268 Mo. 264. (2) The court erred in ruling on the introduction of testimony. See cases cited above. (3) The court erred in instructing the jury on the measure of damages. R. S. 1909, sec. 5425; Troll v. Laclede Gaslight Co., 182 Mo. App. 600; Hegberg, Admr., v. Railroad, 164 Mo. App. 514; Bagley v. City of St. Louis, 268 Mo. 264. (4) The verdict is excessive. Medley v. Parker-Russell Co., 207 S. W. 887; Stevens v. Light & Power Co., 200 Mo. App. 651; McCulloch v. Powell Lumber Co., 216 S. W. 803; Troll v. Laclede Gaslight Co., 182 Mo. App. 600.

*Charles P. Williams* and *John C. Tobin* for respondent.

BIGGS, C.—On the 24th day of January, 1916, John O'Malley, of the age of 22 years, being unmarried and without children, and in the employ of defendant in its warehouse, came to his death by falling down an elevator shaft maintained by defendant. The Public Administrator being authorized to take charge of his estate, brings this action under sections 5426-5427, Revised Statutes 1909, to recover the damages therein provided resulting from the wrongful death of said O'Malley alleged to have been caused by the negligence of defendant.

All allegations of negligence were either abandoned or instructed out of the case save one, namely: "That the said John O'Malley came to his death as a direct result of the negligence of defendant, in this, that on said day defendant was maintaining in its warehouse a large freight elevator for the purpose of transporting heavy freight carried on trucks from floor to floor of its said warehouse, which was of the height of several stories; that the said elevator was so constructed and maintained that between the side thereof and the walls of the shaft in which it operated, there was an open space or aperture some eight or ten feet in length and some fifteen inches in width, and the said aperture was insufficiently and improperly guarded, so that the men employed upon the said elevator in pushing off heavily laden trucks were apt to step or slip into the said aperture and be thereby precipitated to the basement beneath for a distance of many feet."

It is further alleged that while the said John O'-Malley was so employed at or about the third floor of the said warehouse and was engaged with others in endeavoring to push off a heavily laden truck from the said elevator, he stepped or slipped into the said aperture and was precipitated down the shaft to the basement thereof and was immediately killed.

It is further averred that the said John O'Malley at the time of his death was the sole support of his aged and indigent father, Patrick O'Malley, resident in Ireland, and at the time of his death and for some time theretofore, the said John O'Malley was contributing to the support of his said father approximately the sum of $30 per month.

Judgment is prayed in the sum of $10,000 to the use and benefit of the persons entitled thereto.

The answer was a general denial, coupled with a plea of contributory negligence. Following a verdict of the jury, judgment was rendered for plaintiff in the sum of $5000, from which defendant appeals after the usual preliminaries.

Errors are assigned as follows:

1.     The court erred in refusing to give defendant's instruction in the nature of a demurrer to the evidence, for the reason that the accident was not due to any negligence of defendant, and for the reason that the petition fails to state a cause of action.
2.     Error was committed in the admission of improper evidence on behalf of plaintiff.
3.     The court erred in instructing the jury on the measure of damages, and

Lastly, that the verdict is excessive.

I.    The propriety of giving the peremptory instruction to the jury to find for defendant involves a statement of the material facts.

The deceased started to work for the defendant on the morning of the day on which he was killed. His duties consisted of storing and trucking freight on the fourth floor of the defendant's warehouse in the city of St. Louis. At about 4 o'clock in the afternoon of that day he fell from the elevator, which was then stationary on the fourth floor, down the elevator shaft to the basement. The elevator was used for the carrying of heavy freight and was a large affair, being about fifteen feet long by twelve feet wide. The south and west walls of the elevator proper were enclosed with solid sides up about four feet from the floor and then wired from there to the top of the elevator cage. The north and west sides of the elevator were kept open for the purpose of loading and reloading freight therefrom. When the elevator was loaded on the first floor, the loading was done from the north side, and on the other floors the unloading was done from the west side. A part of the north side of the elevator cage was a solid wall, the same as on the south and east sides, but for a distance of some five or six feet there was an open space along the rest of the north side when the elevator was at the fourth floor. When the elevator was on the first floor, the bottom thereof and the side of the elevator shaft came close together on the north side, but as the elevator moved upward this space widened, so that when the ele-

vator was stationary on the fourth floor there was an aperture some five or six feet long and twelve to fifteen inches wide between the floor of the elevator and the north wall of the shaft. On this north side there was a iron bar attached to the northwest corner of the cage which extended across the opening, and which worked on a hinge, which could be raised when the elevator was being loaded on the first floor. When the elevator moved upward from the first floor, this iron bar about one inch in diameter, would be put down to a horizontal position and form a guard across the open space on the north side. When in position the bar was about 2½ feet above the floor of the elevator, and which would strike the average man at about the waist line.

At the time of his injury, the deceased was working on the fourth floor. Another employee in charge of the elevator brought the elevator up to the fourth floor laden with two trucks, on each of which was 25 sacks of sugar weighing 100 pounds each. The operator of the elevator on arrival at the fourth floor, being unable to move the trucks alone, and as was customary, called for the deceased and another employee to aid him. The elevator operator took hold of the tongue of the trucks. The other employee went to the south side of the trucks and to the rear thereof for the purpose of pushing them off of the elevator, and the deceased, John O'Malley, went to the north side for the same purpose. The north truck when standing on the elevator was about two feet from this open space or aperture. At about the time the deceased and the other employee began to push on the trucks a jar was felt, and the deceased was gone from the elevator, and was immediately found at the bottom of the elevator shaft. No one actually saw him fall through the aperture, but the physical facts leave only one conclusion, and that is, that the deceased either stepped or slipped, at the time he was attempting to push the truck, through this open space or aperture. Between the elevator and the north wall of the elevator shaft is a wire screening, which would give in the event any one fell against it. Dust which had formed on this wire screen

at the fourth floor had been brushed off by something and was noticed by a witness shortly after the accident. There seems little doubt that the deceased, John O'-Malley, fell against this wire screen and the weight of his body pushed it northward enabling him to fall through the aperture some twelve or thirteen inches wide. This is the only possible way that he could have fallen from the elevator into the shaft. The guardrail spoken of, was 3½ or 4 feet from the bottom of the elevator; and, as stated, was a piece of iron pipe one inch in diameter laid across the north side of the elevator. There was evidence that this guardrail was in position at the time, but assuming that it was, there was sufficient space under the rail for the deceased to have fallen through and into the open space between the floor of the elevator and the side of the elevator shaft, when it appeared that one falling would fall against the woven wire screening which would cause it to give, thereby increasing the width of the space between the elevator and the side of the shaft.

It appeared that there was no necessity for this aperture or open space to be at the place indicated. The same could have been closed up by means of a board or boards placed between the floor of the elevator and the side of the elevator shaft at the fourth floor, or the north side of the elevator could have been securely guarded by means of a closed gate which would slide back and forth or otherwise. The one inch iron bar referred to, was of some protection, but as appears in this case, was not a sufficient guard to prevent one from falling into the aperture and down the shaft 100 feet to the basement of the building.

It is well established that in actions of this sort, where there are no eyewitnesses, it is frequently impossible to prove the facts and circumstances surrounding the injury, and especially the absence of contributory negligence. On account of this the courts are more liberal in allowing the questions of the negligence of the defendant and of the contributory negligence of the plaintiff to go to the jury upon slight evidence. It is likewise settled

that where no one saw the accident and there is no direct evidence of the circumstances, it may be presumed that the deceased was prompted by the instinct of self presevvation, and at the time exercised due care for his safety. [Buesching v. St. Louis Gas Light Co., 73 Mo. 219.]

It is quite true, as asserted by defendant's counsel, that presumptions of the law disappear in the light of actual facts, but under this record the facts and circumstances surrounding the occurrence are not such as to require us to hold that deceased was guilty of contributory negligence as a matter of law.

It was defendant's duty to use ordinary care to furnish deceased a reasonably safe place to work. The condition of the elevator with the aperture was a matter of permanent construction, and was maintained in that condition for sufficient time to authorize a finding that defendant either knew, or by the exercise of ordinary care should have known, the condition thereof.

We are of the opinion that the question of whether defendant was guilty of negligence in maintaining this elevator with this open space or aperture guarded in the manner in which it was guarded by the simple iron bar, was a question for the jury. Likewise whether or not the deceased was in the exercise of proper care for his own safety at the time, was also a question for the jury.

It is claimed that the demurrer to the evidence should have been sustaned, for the reason that the petition fails to state a cause of action, because no allegation is made showing for whose benefit the suit was brought, but if the allegations made are sufficient to show the action was maintained for the benefit of the father, Patrick O'Malley, then it appeared from the evidence that there were other beneficiaries not named, and that the law requires that all be named. It is clear that the allegation of the petition is sufficient to show that the action was brought for the benefit of Patrick O'Malley, the father, to whom the deceased contributed from $25 to $40 per month, and who in consequence suffered pecuniary loss for the alleged wrongful death of John O'Malley.

Our courts hold that when an administrator sues under the wrongful death statute, the petition must allege the names of the beneficiaries for whom he sues, other than the estate, and the facts from which the measure of damages may be ascertained. [Dixie v. Johnson Min. & Dev. Co., 187 S. W. 1; Kirk v. R. R., 265 Mo. 341, 177 S. W. 592; Troll v. Laclede Gas Light Company, 182 Mo. App. 600, 169 S. W. 339.] In these cases no beneficiary was named, and there were no facts alleged showing that any one suffered a pecuniary loss by reason of the death of the deceased.

In the present case it appeared from a deposition introduced in evidence, that Patrick O'Malley, father of the deceased, lived on a small farm in Ireland with his three minor daughters; that the deceased and two brothers and a sister lived in the United States; that he had contributed monthly amounts to his father's support, but had sent no funds to his sisters or brothers, but that the father used the amounts sent to him for the support of himself and the three sisters who lived with him, being aided by what he made out of his farming operations. There was no obligation on the part of the deceased to contribute to the support of his sisters, and they suffered no direct pecuniary loss by reason of his death. Because the father chose to use a part of the sum contributed by the deceased in aiding in the support of his daughters, did not render it necessary that they be named in the petition as beneficiaries, so as to show that they suffered damages from the death of their brother. The object of requiring that a beneficiary or beneficiaries be named in the petition is for the purpose of showing that some one suffered a pecuniary loss by reason of the death; otherwise the suit could not be maintained. The only person under the facts of this case who suffered such pecuniary loss, was deceased's father, and he was named. The sisters in Ireland received an indirect benefit through the contributions to the father, but no amounts were contributed to them directly by the deceased. So we think the failure to name the brothers and sisters was, at most, harmless error, and could not affect the validity of the

judgment. Their loss was nominal, and for their benefit only nominal damages could be recovered. Under our statute, however, they are entitled to share in the judgment.

The Administrator does not sue for the benefit of the estate, but the amount recovered must be distributed according to the laws of descent. However, no action can be maintained unless there is in being at the time some beneficiary or beneficiaries who have suffered a pecuniary loss, and such facts must be alleged so as to establish a foundation for the damages.

Under a statute of Indiana, similar to ours, it is held, that in an action brought by an administrator for the benefit of dependent next of kin, it is only necessary to allege such facts on that subject as will show that some one or more of such beneficiaries existed, as the identity of such beneficiaries only becomes important in determining the amount of damages (Smith v. R. R., 117 N. E. 534, l. c. 538). We rule that the petition after judgment is sufficient to state a cause of action.

II. When the depositions taken in Ireland were offered in evidence, the counsel for defendant objected, on the ground that they show that John O'Malley left surviving him a father, two brothers, and four sisters, and the petition does not allege any such survivorship, and therefore said evidence is not competent in the absence of such such allegation. The ruling might be upheld on technical grounds under the objection made, as the objection went to the whole deposition, which contained other evidence than that objected to which was concededly competent. However, it is unnecessary to uphold the ruling of the court on that ground, as we think the admission of the evidence to the effect that the deceased left surviving him two brothers and four sisters did the defendant no harm. The evidence showed that these brothers and sisters did not suffer any pecuniary loss by reason of the death; and in view of the instruction on the measure of damages which permitted a recovery only for such necessary injury as Patrick O'Malley, the father,

suffered from the death of John O'Malley, the admission of the evidence was non-prejudicial, and did not affect the substantial rights of the defendant. The instruction on the measure of damages did not permit the jury to take into consideration the fact that beneficiaries existed other than the father, Patrick O'Malley.

III. The instruction on the measure of damages told the jury to assess the damages at such sum as they may believe from the evidence will be fair and just with reference to the necessary injury resulting from the death of John O'Malley to his father Patrick O'Malley, not exceeding the sum of $10,000. Objection is made to this instruction, because it does not take into account the brothers and sisters of the deceased. Patrick O'Malley was the only beneficiary that suffered a pecuniary loss, and it seems to us that it would be error against the defendant to permit the jury to take into account pecuniary loss suffered by the brothers and sisters, because the evidence showed that they suffered none. We think the instruction was proper under the facts of the case.

IV. Lastly, it is asserted that the verdict of $5000 was excessive. Counsel argue because of the fact that Patrick O'Malley was 61 years old, and under the life table he had an expectancy of only 13 years, that the amount is excessive, in view of the fact that the deceased was only contributing to his father the sum of $25 to $40 per month, and had only been contributing such for a period of four or five months prior to his death. It is well settled that in a case of this sort the jury are not required to confine their verdict to such sum as may be ascertained by taking into account the amount of contributions made monthly, based on the life expectancy of the beneficiary. The jury are not bound by the life tables showing the expectancy (Bright v. Thatcher, 215 S. W. l. c. 793, and cases there cited). John O'Malley was a strong, healthy man, who showed disposition to increase his contributions to his father's support, as he had done so for the month previous to his death, and it is not unreasonable for the jury to assume that such

amounts would have been increased in the future had he lived.

The case of Honea v. Railroad, 245 Mo. 640, 151 S. W. 119, upheld a judgment under the wrongful death statute for $10,000 in behalf of a widow, where her husband had been earning $1.25 per day. In view of the depreciation of the value of a dollar, of which we are entitled to take judicial notice, and in view of the further fact that we may judicially know that wages have increased to a very great extent since 1916, the date of the death, we hold that the amount of damages assessed in behalf of Patrick O'Malley under the evidence was not an excessive amount.

No reversible error appearing in the record, the judgment should be affirmed.

PER CURIAM:—The foregoing opinion of Biggs, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed.

*Reynolds, P. J., Allen* and *Becker, JJ.,* concur.