William David DEICHMANN, Jr., and Elizabeth Deichmann, Co-Executors of the Estate of William Deichmann, Deceased (Plaintiffs), Respondents,

v.

Sophie ARONOFF, Executrix of the Estate of Goldie Rovin, Deceased (Defendant), Appellant.

No. 29483.

St. Louis Court of Appeals.

Missouri.

Dec. 4, 1956.

Gerwitz & Seegers, G. L. Seegers, St. Louis, for appellant.

John A. Eigel, Josephus M. Todd, Louis E. Zuckerman, St. Louis, for respondent.

ANDERSON, Presiding Judge.

This case began as a claim in the Probate Court filed by William Deichmann against the estate of Goldie Rovin. The claim was grounded on a check for $1,000 and six promissory notes, secured by chattel mortgages on automobiles—three of the notes being in the amount of $1,000 each; one in the amount of $500; one in the amount of $600; and one in the amount of $800. The notes provided for interest and attorney's fees. The statement filed in the Probate Court allowed a credit of $200.

After trial, the Probate Court allowed the claim in the total sum of $5,700, and ordered it placed in the fifth class. The executrix, Sophie Aronoff, appealed to the Circuit Court. In the Circuit Court a jury was waived and a trial had before the court. Said trial resulted in a judgment for claimant in the sum of $5,700. From this judgment, the executrix appealed. Subsequent to the appeal, claimant died, and the executors of his estate, William David Deichmann, Jr., and Margaret Elizabeth Deichmann, were substituted as party plaintiffs.

The check for $1,000 was dated February 2, 1949. It was drawn on the Citizens National Bank of Maplewood, payable to the order of William Deichmann, and was signed Maplewood Auto Mart by Morris D. Rovin and Leo Gibstein. On the back of the check was the endorsement of William Deichmann and the stamped endorsement "Pay to the order of any Bank, Banker or Trust Co. Previous Endorsements Guaranteed Apr. 18, 1949, Webster Groves Trust Co. 80–121 Webster Groves, Mo. 80–121." From the testimony, it appears that this check was not paid, and that the drawers of the check thereafter paid plaintiff $200. This testimony was given by plaintiff. He stated: "there was one, a $1,000 check come back, gave me $200, which I accepted, they didn't want to go to jail. Mrs. what-you-call-it came out—Gibstein's wife, and I accepted it * * * so I said, 'all right', I said 'I know it is only a promissory note after that', so I accepted that."

It was stipulated at the trial that the signatures of Morris D. Rovin and Leo Gibstein were genuine.

All of the notes were payable to "Wm. Deichmann" and were signed "Maplewood Auto Mart, by Morris D. Rovin." It was admitted by defendant's counsel at the trial that the signature of Morris D. Rovin appearing on the notes was the genuine signature of said Morris D. Rovin. Defendant objected to the introduction of the check and notes unless there was a proper foundation laid by proof that Goldie Rovin was the owner of Maplewood Auto Mart and that she had notice or knowledge of these transactions, or authorized them. The court overruled the objection subject to such proof.

Plaintiff's theory, as developed by his evidence, was that Goldie Rovin, the deceased, was either the owner or part owner of the Maplewood Auto Mart, a used car business. In support of this theory plaintiff attempted to show that Goldie Rovin's funds were used to open the bank account of Maplewood Auto Mart at the First National Bank in St. Louis, and that certain checks of the Maplewood Auto Mart were deposited in her personal account at said bank. The bank account of

Maplewood Auto Mart was opened July 26, 1948.

Earl B. Barnard, Assistant Auditor of the First National Bank, produced in court a photostatic copy of a document which he stated was a part of the records of the bank, and under which the account of the Maplewood Auto Mart was opened. This document was marked and introduced in evidence as Plaintiff's Exhibit 6, the material portions of which are as follows:

"To First National Bank in St. Louis

"The undersigned desires to establish with the First National Bank in St. Louis a checking account to be known as Maplewood Auto Mart, and hereby certifies that said name is a trade name used in the conduct of an unincorporated business owned entirely by the undersigned.

"Checks and orders for the payment of money withdrawing funds from said account may be signed by:

"Morris D. Rovin and Leo Gibstein.

"Notes and mtgs. for floor plan of autos with titles either signature acceptable.

"Checks, drafts, notes, bills of exchange and orders for the payment of money may be endorsed by any of the above and deposited with First National Bank in St. Louis for the credit of said account. Such endorsements may be made in writing or by a stamp and without designation of the person so endorsing.

"The undersigned authorizes and requests First National Bank in St. Louis to pay and charge to said account checks, obligations and orders for the payment of money drawn on or payable at, or which shall be paid or honored by First National Bank in St. Louis when so signed whether payable to the order of any of said signers or not; and further authorizes and requests First National Bank in St. Louis to receive deposits and conduct the said account in accordance with the instructions stated above, and stated on the authorized signature card filed with First National Bank in St. Louis by the undersigned.

"If any other persons become interested in said business as co-partners of the undersigned, or if the business should become incorporated, the undersigned will notify First National Bank in St. Louis promptly.

"Morris D. Rovin Goldie Rovin
"Leo Gibstein , Sole Owner."

When the exhibit was offered defendant's counsel objected to any testimony with reference to it unless it was shown that Goldie Rovin either signed or authorized someone to sign her name to the instrument. The objection was overruled, and the exhibit received in evidence subject to a later showing that deceased authorized her signature to the document.

The first item credited to the account was a check for $500, dated July 26, 1948, payable to Maplewood Auto Mart and signed "Goldie Rovin, by Sophie Rovin." Defendant objected to this evidence on the ground that there was no proof that the check was signed by Goldie Rovin or that she authorized someone to sign it in her behalf. The court overruled the objection, subject to proof that the party who signed the check was authorized to do so by Goldie Rovin. Thereafter, it was shown that Goldie Rovin could not write her name in English, and her daughter, Sophie Rovin, was authorized by a power of attorney to sign her mother's name to checks drawn on said bank. This power of attorney was never revoked prior to Goldie Rovin's death.

It appears from the records of the bank that on August 18, 1948, there was a check for $2,000 drawn on the account of Maplewood Auto Mart, signed "Maplewood Auto

Mart, by Morris D. Rovin and Leo Gibstein," payable to Goldie Rovin. The records also show that this check was credited to Goldie Rovin's account on August 19, 1948. On August 19, 1948, there was a check of Maplewood Auto Mart for $1,000 drawn in favor of Goldie Rovin and deposited in her account at the bank on the same date. Defendant objected to the consideration of the above mentioned checks and the deposit slips showing that the checks were credited to Goldie Rovin's account, for the reason that there was no showing that Goldie Rovin endorsed said checks or authorized anyone to endorse them for her and deposit said checks to her account. The objection was overruled.

There was also introduced in evidence a photostatic copy of an application for registration of the fictitious name of Maplewood Auto Mart. This application is stamped as filed in the office of the Secretary of State on October 13, 1948. The material portions of said application are as follows:

"I, the undersigned, am doing business at No. 7228–30 Manchester Street, in the City of Maplewood, County of St. Louis, State of Missouri, under the name Maplewood Auto Mart.

| Name | Street & Number | City | State | Interest |
|------|-----------------|------|-------|----------|
| "Goldie Rovin | 7228 Manchester | Maplewood | Mo. | Owner |

\* \* \* \* \* \* \* \* \* \* \*

"The undersigned Goldie Rovin being all the parties owning interest in the above-named company, being duly sworn, upon their oaths each did say that the statements and matters set forth therein are true.

"Goldie Rovin

"Subscribed and sworn to before me, this 27th day of July, A.D., 1948.

"Irwin L. Cohn
"Notary Public."

There was also introduced in evidence a photostatic copy of an application to the License Collector of Maplewood for a Merchant's License. Defendant objected to any evidence with reference to the foregoing instrument, on the ground that there had been no proper foundation laid for such evidence by showing that Goldie Rovin authorized said application. The court overruled the objection upon assurance by plaintiff's counsel that such foundation would be laid. The application is dated September 15, 1948, and signed "Maplewood Auto Mart by Leo Gibstein." The name of the applicant is given as Goldie Rovin. Mr. Usher, the City Collector, testified that all the information contained in this application was given to him by Leo Gibstein.

Plaintiff then offered the check and notes sued on as plaintiff's Exhibit 1. To this offer defendant objected, on the ground that there was no evidence that Goldie Rovin had authorized anyone to execute the documents, or that she had anything to do with Maplewood Auto Mart. At the time this objection was made the court stated that the evidence would be admitted subject to the objection, and that he would rule on same at the time of his decision on the merits.

Plaintiff's Exhibit 2 was offered. This exhibit was a photostatic copy of the $500 check, dated July 26, 1948, signed Goldie Rovin by Sophie Rovin, payable to Maplewood Auto Mart and drawn on the First National Bank, to which was attached ledger sheets of the bank showing the ac-

count of the Maplewood Auto Mart, and revealing that the $500 check was credited to said account. Defendant objected to this evidence on the ground that there had been no showing that Goldie Rovin had any notice or knowledge of the check, or that she authorized it. The court made the same ruling as was made with respect to the objection to plaintiff's Exhibit 1.

Plaintiff's Exhibit 3 was offered. This exhibit consisted of three ledger sheets showing Goldie Rovin's account at the bank. There was no objection to this exhibit.

Plaintiff's Exhibit 4 was offered. This was a photostatic copy of the power of attorney executed by Goldie Rovin appointing Sophie Rovin her attorney with reference to her account at the bank. There was no objection to this exhibit.

Plaintiff's Exhibit 5 was offered. This exhibit was a signature card of the First National Bank showing the signatures of Morris D. Rovin and Leo Gibstein as those to be recognized in payment of funds or the transaction of other business on behalf of Maplewood Auto Mart. This offer was objected to on the ground that there was no showing that Goldie Rovin had anything to do with the account of Maplewood Auto Mart, or that she authorized the persons whose names appeared on said card to sign checks on said account. The court made the same ruling on this objection as was made with respect to the previous objections.

Plaintiff's Exhibit 6 was offered. Said Exhibit 6 is heretofore set out in this opinion. It purports to be signed by Goldie Rovin, and is an authorization to the First National Bank to establish a checking account for Maplewood Auto Mart. This offer was objected to on the ground that it was not shown that Goldie Rovin either signed the document or authorized anyone to sign it in her behalf. The court made the same ruling on this objection as was

made with regard to the objection to plaintiff's Exhibit 1.

Plaintiff's Exhibit 7 was then offered. Said exhibit was a signature card of the First National Bank with a power of attorney executed by Sophie Rovin appointing Morris D. Rovin as her attorney in fact with reference to her account. This was objected to on the ground that the evidence was irrelevant and immaterial. The court made the same ruling with reference to this objection as was made with respect to the objection to plaintiff's Exhibit 1.

Plaintiff's Exhibit 8 was then offered. Said exhibit was a deposit slip of the First National Bank, dated August 18, 1948, showing a deposit to the account of Goldie Rovin of the sum of $2,045, with a $2,000 check of the Maplewood Auto Mart, dated August 17, 1948, attached, payable to Goldie Rovin, signed Maplewood Auto Mart, Morris D. Rovin and Leo Gibstein; also a deposit slip of the First National Bank, dated August 19, 1948, showing a deposit to the account of Goldie Rovin of $150 in currency and $1,000 from a check for that amount, and attached thereto a check for $1,000 of Maplewood Auto Mart, dated August 18, 1948, payable to Goldie Rovin, signed Maplewood Auto Mart, Morris D. Rovin and Leo Gibstein. The offer was objected to on the ground that there had been no proof that Goldie Rovin had any notice or knowledge of the two transactions; that there was no evidence that she had endorsed the checks for deposit, or knowledge that the checks were deposited to her credit. The court made the same ruling on this objection as was made with regard to the objection to plaintiff's Exhibit 1.

Plaintiff then offered the application for registration of Maplewood Auto Mart as a fictitious name as plaintiff's Exhibit 9. The offer was objected to on the ground that there was no evidence that Goldie Rovin signed it or authorized its signing, or had any knowledge of it, and that it was inad-

missible as hearsay and not an admission on the part of Goldie Rovin. The court made the same ruling on this objection as was made with respect to the objection to plaintiff's Exhibit 1.

The application to the License Collector of the City of Maplewood for a merchant's license, in which Goldie Rovin is shown as applicant, was then offered as plaintiff's Exhibit 10. This offer was objected to on the ground that there was no proof that Goldie Rovin authorized same, or had any knowledge of it, or any interest in Maplewood Auto Mart. The court made the same ruling on this objection as was made with respect to the objection to plaintiff's Exhibit 1.

Plaintiff then offered as plaintiff's Exhibit 11 a photostatic copy of an application of Maplewood Auto Mart for registration as a dealer in automobiles, signed Maplewood Auto Mart, by Goldie Rovin. This offer was objected to on the ground that there was no proof that Goldie Rovin executed the instrument, or authorized its execution. The court made the same ruling on this objection as was made with respect to the objection to plaintiff's Exhibit 1.

Plaintiff's Exhibit 12 was then offered. Said exhibit was a check for $600, drawn by plaintiff on his account at the Webster Groves Trust Company on November 6, 1948, payable to Maplewood Auto Mart, and endorsed by Maplewood Auto Mart, by Leo Gibstein, and deposited in the account of Goldie Rovin. This offer was objected to on the ground that "it is not binding on the deceased, Goldie Rovin, there is no evidence to show she had any notice or knowledge of the transaction."

Defendant offered only one witness—Sam Aronoff—the husband of the executrix and son-in-law of the deceased, who merely presented a number of deeds and testified that Goldie Rovin could not sign her name.

The foregoing evidence was presented at a hearing held April 24, 1953. On that day the court took the case under advisement. On December 14, 1953, the court of its own motion reopened the case for further testimony.

Thereafter, plaintiff took the deposition of Leo Gibstein. Defendant appeared by counsel at the taking of this deposition. Thereafter, and on February 25, 1955, this deposition was offered in evidence by plaintiff. Defendant objected to this offer on the ground that Gibstein was incompetent as a witness under Section 491.010 RSMo 1949, V.A.M.S. The court took this objection, as submitted, with the case on the merits.

Gibstein testified that his first connection with the Maplewood Auto Mart was as an employee. He started working there in July, 1948. At that time Morris Rovin was manager of the business and Gibstein took orders from him. He stated that in September, 1948, he became a partner in the business with Goldie Rovin and Morris Rovin. Regarding a meeting at which he, Goldie Rovin and Morris Rovin were present, Gibstein further testified:

"it was stated when I put my money in that I would become a partner with Morris and Goldie Rovin.

"Q. Who said that? A. Morris Rovin.

\* \* \* \* \* \*

"Q. What did Goldie Rovin say? A. If I invested my money we would become partners."

This conversation took place at the home of Goldie Rovin. Gibstein stated that he put $2,000 into the business, and that Morris Rovin had money invested in it. He stated: "We agreed to draw so much money out each week and to split the profits \* \* \* in equal shares \* \* \* we would all receive the same amount, myself, Morris Rovin and Goldie Rovin." He stated that Goldie Rovin had $7,900 in the business when it was started.

Gibstein further testified that Morris Rovin had a power of attorney from Goldie Rovin authorizing him to sign her name, and that both he and Morris Rovin had a

power of attorney to sign her name to checks. He stated that the signature of Goldie Rovin appearing over the words "sole owner" on plaintiff's Exhibit 6 was in the handwriting of Morris Rovin; that the name of Goldie Rovin as it appears on Exhibit 9, being the application for registration of fictitious name, was in the handwriting of Morris Rovin; that the name Goldie Rovin appearing on an application to the Department of Revenue, for Registered Dealer Number 4–404, dated August 17, 1948, containing the statement that the applicant was an individual, was in the handwriting of Morris Rovin; and that Goldie Rovin authorized him to sign the name of Maplewood Auto Mart on the application for Merchant's license in the name of Goldie Rovin.

Gibstein further testified that Goldie Rovin did not participate much in the business, but more or less depended on her son Morris and daughter Sophie to handle her affairs. He stated that he did discuss the business with her several times, and on occasion would stop by her house and pick up checks. These were times when the business was in need of money.

The partnership was dissolved in February, 1949. Gibstein said that there had been no final accounting of the partnership affairs.

Thereafter, on July 1, 1955, the court entered the following memorandum in the cause:

"The objection to the introduction of the deposition of Leo Gibstein is overruled; and it is ordered by the court that said deposition be received in evidence.

"It is further ordered by the court that all the objections by counsel on behalf of the Estate of Goldie Rovin to which the court reserved rulings are now ordered overruled."

On the same date the court entered its judgment in favor of plaintiff and against the defendant in the sum of $5,700.

■ It is urged that the judgment should be reversed for the reason that the claim filed in the Probate Court failed to state facts sufficient to justify the relief prayed.

The "Notice of Demand" filed in the case sets forth the constitutive elements of a demand. It describes the exact nature of the indebtedness as a demand for the sum of $5,700 founded on notes, photostatic copies of which were attached, and on a check, copy of which was also attached. It stated further that the demand would be presented to the Probate Court for allowance at its next term. Attached was the usual affidavit containing the statement that claimant had given credit to the estate for all payments and off-sets to which it was entitled, and that the "balance claimed on the annexed photostatic copies of the notes and copy of check is justly due."

In our opinion the claim did not fail to state a cause of action. Rassieur v. Zimmer, 249 Mo. 175, 155 S.W. 24.

■ It is next urged that, since Goldie Rovin's name does not appear on the notes or the check, her estate cannot be held liable, and for that reason it was error to permit plaintiff to offer evidence to show Mrs. Rovin's interest in Maplewood Auto Mart. In support of this contention defendant relies upon Section 401.018 RSMo 1949, V.A.M.S. Said section provides:

"No person is liable on the instrument whose signature does not appear thereon, except as herein otherwise expressly provided. But one who signs in a trade or assumed name will be liable to the same extent as if he had signed in his own name."

It has been held that a partner is liable on a note executed by the managing partner in connection with the operation of the business, notwithstanding the above mentioned statute. Commerce Trust Co. v. McMechen, Mo.App., 220 S.W. 1019. To us, this is sound law. Therefore, Goldie Rovin could be held liable on the note in question whether she was the sole owner

doing business under a fictitious name, or was a member of a partnership doing business as Maplewood Auto Mart. The court did not err in receiving the evidence complained of by appellant.

It is next urged that the court erred in withholding rulings on objections made by defendant's counsel during the course of the trial. As heretofore pointed out, this method of procedure occurred when plaintiff sought to introduce in evidence the instruments sued on and other documents, the admissibility of which depended upon proof of authorization by deceased or evidence of her proprietary interest in Maplewood Auto Mart. These documents were again offered at the close of plaintiff's case, at which time the court in each instance ruled that the document in question would be admitted subject to the objection, and that he would rule on same at the time of his decision on the merits.

It is within the discretion of the trial court to determine in what order the parties shall introduce their evidence; and, when evidence is admissible contingent upon proof of other facts, the trial court may determine which evidence shall be admitted first. Bedenk v. St. Louis Public Service Co., Mo.Sup., 285 S.W.2d 609; Hart v. Farmers' Bank of Bates County, Mo.App., 28 S.W.2d 121; 88 C.J.S., Trial, § 97, page 208. Likewise, it is within the discretion of the trial court to reserve rulings on objections to evidence until a decision is reached on the merits. Taylor v. Cayce, 97 Mo. 242, 10 S.W. 832. The appellate court will not interfere with the trial court's exercise of that discretion unless it appears that there was an abuse thereof to the prejudice of the complaining party. Bedenk v. St. Louis Public Service Co., supra; Meyers v. Drake, 324 Mo. 612, 24 S.W.2d 116; Taylor v. Cayce, supra.

We find no abuse of discretion in this case. Furthermore, there was no objection to this method of procedure, either at the trial or in defendant's motion for new

trial. A mere general objection to the reception of the testimony would not be sufficient to preserve the point for review. Taylor v. Cayce, 97 Mo. 242, 10 S.W. 832. For that reason alone, appellant is in no position to complain of the court's actions in this respect.

It is urged that the court erred in admitting in evidence the deposition of Leo Gibstein "without giving defendant an opportunity to object to the questions and answers therein, and without the court ruling on objections made at the time of taking the deposition."

The transcript shows that after the deposition was filed counsel for both parties appeared before the court. Considerable discussion ensued relative to the procedure to be followed with reference to this deposition. Plaintiff offered the deposition as his Exhibit 20. Defendant's counsel made the following objection to this offer—

"Mr. Edwards: And I object to the offer of this deposition in evidence on the grounds heretofore stated, that is, that the witness in this deposition, the testimony here is in direct violation of Section 491.010 of the Missouri Statutes commonly referred to as the Dead Man's Statute, and I object to the offer of the entire deposition, and I also wish to renew the objections carried throughout the deposition by Mr. Evans to the various parts."

Later in the transcript appears the following:

"The Court: (referring to defendant's counsel) * * * his only objection to the deposition is that it is a violation of the Dead Man's Statute, that is your only objection?

"Mr. Edwards: That is right."

From an examination of the transcript it appears that it was agreed that the deposition would be received subject to the objection; that it need not be read at that time; and that counsel for both sides would

submit briefs on the applicability of the Dead Man's Statute.

Defendant's counsel was not deprived of an opportunity to make specific objections to the questions and answers contained in the deposition. But instead of doing so he was content to interpose a general objection to the whole deposition on the ground that the witness was incompetent under the Dead Man's Statute. This objection was ruled adversely to defendant's contention in the memorandum filed at the time the case was finally decided on the merits. Defendant made no complaint in his motion for new trial concerning the procedure employed with reference to the admission of this deposition. We rule there is no merit to this assignment of error.

 It is urged that the court erred in reopening the case in order for plaintiff to present evidence on a theory of recovery different from that shown by the evidence theretofore offered. The record shows that Mr. Boxermann, the attorney representing the estate, was present at the time the submission was set aside. He made no objection to the order. The action of the court in setting aside the submission was not assigned as error in the motion for new trial. It would appear, therefore, that the matter is not properly preserved for review. But if it had been preserved, we would not be justified in convicting the trial court of error. The trial court has a broard discretion as to such matters. It may permit the reopening of the case for either party if the ends of justice appear to so require. Taylor v. Cayce, 97 Mo. 242, 10 S.W. 832. It does not appear there was an abuse of discretion in this case. After the deposition was introduced and received in evidence the court notified defendant's counsel that the deposition had been ruled admissible and requested that counsel advise the court if he desired to introduce additional evidence. In reply to this letter defendant's counsel stated that he had decided not to offer additional evidence, but was taking the position that the deposition was not competent under the Dead Man's Statute.

We fail to see how defendant was prejudiced. Counsel for defendant was given ample opportunity to rebut Gibstein's testimony. There was no showing that Morris Rovin was not available to rebut Gibstein's testimony if the latter's testimony was untrue. We must rule the assignment against appellant.

 Appellant says that the court erred in permitting plaintiff to testify. In support of this contention it is urged that plaintiff was an incompetent witness under Section 491.010 RSMo 1949, V.A.M.S. Respondents object to a consideration of this point for the reason that the matter was not properly preserved in the motion for new trial. There is no specific assignment in the motion directed to the competency of the witness, and respondents object to the consideration of this point under the general assignment that the court erred in admitting incompetent, irrelevant and immaterial evidence and testimony.

Respondents cite Drake v. Kansas City Public Service Co., 333 Mo. 520, 63 S.W.2d 75, in support of their position. The case seems in point. The rule was there announced that an assignment in a motion for new trial, such as here made, is not sufficient to present for review an objection to the competency of a witness to give testimony. The court cites In re McMenamy's Guardianship, 307 Mo. 98, 270 S.W. 662, where the court held that a general objection that the evidence was not competent does not amount to an objection that the witness is incompetent on the ground that the other party to the transaction was insane. See also Romandel v. Kansas City Public Service Co., Mo.Sup., 254 S.W.2d 585.

 It is next urged that the court erred in admitting into evidence the deposition of Leo Gibstein. In support of this contention it is urged that Gibstein was not a competent witness under Section 491.010 RSMo 1949, V.A.M.S. In raising this point below defendant's counsel made a general

·objection to the introduction of the deposition. He, in effect, objected to the court ·considering any of the testimony therein contained. This position, of course, is not tenable, for the reason that the witness was ·not disqualified for all purposes. He gave ·considerable testimony that could not be said ·to be inadmissible by reason of the Dead Man's Statute. Under such circumstances, a general objection is properly overruled. Burgdorf v. Keeven, 351 Mo. 1003, 174 S.W. 2d 816; Elsea v. Smith, 273 Mo. 396, 202 S.W. 1071; Goodrich Rubber Co. v. Robertson, 222 Mo.App. 510, 281 S.W. 75; Stephenson v. Stephenson, 351 Mo. 8, 171 S.W. 2d 565; Newell v. St. Louis Transfer Co., 205 Mo.App. 543, 226 S.W. 80; Tremain v. Dyott, 161 Mo.App. 217, 142 S.W. 760. The ·contention urged here that Gibstein was not competent to establish a contract of partnership with deceased is not presented by such a general objection. Nor was there any specific objection made in the motion for new trial directed to the competency of the witness to testify with reference to the partnership. By reason of the failure to make a specific objection below and preserve same in the motion for new trial, the matter complained of is not here for review.

Appellant's final contention is that the court erred in not entering a judgment for the defendant. It is urged that plaintiff failed to show that Goldie Rovin ever signed or authorized the signing of the several instruments that form the basis of this suit, and that plaintiff therefore was not entitled to recover. In making this argument appellant ignores the evidence adduced tending to show that Goldie Rovin was a partner in the business carried on under the trade name of Maplewood Auto Mart. This evidence stands undisputed.

After considering the evidence, we are convinced that Goldie Rovin was a partner, and for that reason her liability to plaintiff in this action has been established. Commerce Trust Co. v. McMechen, Mo.App., 220 S.W. 1019.

Taken with the case was respondents' motion to dismiss the appeal. This motion is overruled.

The judgment appealed from is affirmed.

MATTHES, J., and SAM C. BLAIR, Special Judge, concur.