Grant KEENEY, Administrator of the Estate of Lloyd Keeney, Deceased, Plaintiff-Appellant,

v.

John A. CALLOW, Defendant-Respondent.

No. 48530.

Supreme Court of Missouri,

Division No. 1.

July 10, 1961.

Motion for Rehearing or to Transfer to Court en Banc Denied and Opinion Modified on Court's Own Motion Sept. 11, 1961.

Newhart & Zahnd, John W. Newhart, L. Glen Zahnd, Savannah, for appellant.

Sprague, Wilcox & Houts, St. Joseph, for respondent.

HOUSER, Commissioner.

This is an action for $25,000 damages for the wrongful death of Lloyd Keeney, who was killed on March 17, 1959 when his clothes became entangled in the revolving drive shaft of a grain mill he was operating on the farm belonging to his employer, the defendant. At the close of all the evidence the trial judge directed a verdict for the defendant on the ground that plaintiff-administrator failed to prove that defendant had failed to furnish deceased with a protective shield or guard to cover the shaft. Keeney's administrator has appealed from the judgment entered upon the verdict.

The petition charged negligent failure to provide and maintain reasonably safe machinery—setting Lloyd Keeney to work using a grain mill "without providing for said grain mill the proper protective shield for the drive shaft," and failure to warn him "as to the defect and danger of said grain mill." The answer raised the issue of contributory negligence, alleging that Keeney, familiar with the operation, maintenance and service of farm machinery and particularly this machine, failed to use safety devices available and provided for his protection; that he knew where the safety devices were located and was familiar with their use, but failed to exercise ordinary care for his own safety.

■ Appellant makes three points, one of which is that the court erred in directing a verdict for defendant; that the question whether defendant furnished deceased with a cover for the drive shaft was a question of fact for the jury, which could not be declared as a matter of law. In determining this question we state the evidence in the light most favorable to plaintiff, giving him the benefit of all favorable inferences arising therefrom and disregarding defendant's evidence unless it aids the plaintiff's case. Daniels v. Smith, Mo.Sup., 323 S.W. 2d 705, 706.

Lloyd Keeney, single, living at home with his parents, was 30 years old at the time of his death. He had an eighth grade education. He had no physical defects. He had engaged in general farm work from the age of 13. At first he worked with "mostly horses," later using John Deere tractors, doing plowing, but not operating such machines as combines or corn pickers in his previous employments. He went to work

on defendant's farm, under defendant's direct supervision, about two years before his death, doing "mostly general farm work." Several months later defendant took employment in Maryville. Thereafter, although no longer active in any work on the farm, defendant was the overseer. He would confer with Keeney from time to time, ordinarily on weekends, outlining what needed to be done. Keeney, in the interim, "was his own boss." Defendant left it to Keeney to determine "how he was going to get that work done" and when to do the work. Keeney was paid a straight salary of $7 a day or $42 a week, and occasional small additional sums.

One of Keeney's duties was to grind feed for defendant's cattle. Defendant owned a portable John Deere 220X Grain Mill, powered by a farm tractor. A power take-off shaft at the rear of the tractor connected to the end of the mill drive shaft. Power from the tractor was transmitted by the mill drive shaft through the slip clutch and universal joint back to the power box of the mill, in which gears turned constantly, activating belts and burrs which turned and ground the material. The drive shaft, 67 inches in length, approximately level when hooked up to the tractor, was about 23 inches above ground level at the universal joint. A protruding alemite fitting, and a set screw which stuck out at least ¾ of an inch, open and obvious to anyone hooking up the mill, are attached to the drive shaft. One hooking up the mill to the tractor "had a little job on his hands." The drawbar of the portable mill (like the tongue on a wagon) had to be maneuvered into position, "lined up just right," and then securely connected to the tractor, so that the mill would not slip off when in operation. Then the drive shaft had to be connected to the tractor power take-off. When the tractor motor was running and the power take-off engaged, the drive shaft, slip clutch and spring, alemite fitting, set screw and universal joint all spinned or rotated as one unit, at approximately 540 r. p. m. The rapid speed and whirling of the

shaft, etc. was visible to the eye when the mill was operating and the shield not attached. The mill, purchased by defendant prior to Keeney's employment, came equipped with a semicircular, troughlike, shield or guard which, when attached in an inverted position, covered the entire length of the drive shaft, set screw, etc. That shield, used for a time after the mill was first purchased but no longer in use at the time Lloyd Keeney came to work for defendant, was "at the place," "around there some place," but its location on March 17, 1959 was not definitely known or established. There was another shield "available on the Callow farm" and "present" on that day. It was attached to the corn picker on the day of the fatality. The corn picker shield was interchangeable and could be used on the grain mill. (The day after the fatality defendant's brother-in-law, Eugene Lark, took the shield off the corn picker, put it on the grain mill and finished the job of grinding Keeney had started.) While plaintiff's evidence thus developed the fact that there were two shields on the farm available for use and that neither shield was utilized by Lloyd Keeney on March 17, 1959 when the grain mill and tractor were attached, there is no evidence for our consideration on this review that Keeney knew of the existence of the original shield that came with the grain mill or knew that the corn picker shield could be or should be used on the mill, or that either shield had ever been used as a safety device on the grain mill at any time during the period of Keeney's employment.

On the day in question Mrs. John Callow, defendant's wife, saw Keeney when he appeared for work, early in the morning, wearing blue jeans and two short, fitted western-type denim jackets, a new one over an old one, both over a plaid shirt. He was apparently in good health. There was some snow and rain. The ground was wet. A few minutes later Mrs. Callow heard a rumbling noise, looked out the window, and saw that something was wrong. She went to the mill, found

Keeney's body "laying over the draw-bar,"—over the unprotected drive shaft of the grain mill—with the toes of his shoes "touching the ground just like he had fell over or been drawn into it." No shield was attached to the mill or covering the drive shaft at the time of the fatality. Keeney's jacket, shirt and undershirt were wound around the drive shaft. The corner of his jacket had caught on the set screw and wrapped around the drive shaft, and some of his clothing was wrapped around the slip clutch and caught up in the jaws or teeth of the slip clutch. Blood was found on a sharp bar near the tractor end of the drive shaft. Apparently Keeney had been violently flipped over, striking his head on the bar. The coroner found that death was caused primarily by a blow on the left temple and secondarily by strangulation.

The theory of plaintiff's action is that defendant breached his duty to provide his employee with reasonably safe machinery, by setting him to work using a grain mill without providing for the mill the proper protective shield for the drive shaft.

■ It was the common-law duty of defendant toward his employee using machinery in the operation of a farm to use ordinary care to provide him with reasonably safe appliances, machinery and tools with which to work. Adams v. Thayer, 222 Mo.App. 907, 6 S.W.2d 630; Spears v. Schantz, 241 Mo.App. 879, 246 S.W.2d 399; Annotation: Servant—Injury By Farm Machinery, 67 A.L.R.2d 1130. A jury could find that this open drive shaft, revolving at 540 r. p. m. at knee height without any protective shield, was not reasonably safe for one working in close proximity thereto. As indicated there was evidence that there were two shields on the farm at the time the mill was put in operation, at least one of which was "available" in the sense that it was on the corn picker and could have been removed from the picker and attached to the mill. The question is whether we may say, as a matter of law, that defendant complied with his common-law duty by providing a shield in the manner in which the evidence most favorable to plaintiff shows a shield was provided.

■ The common-law duty to provide a shield did not place upon defendant the continuing duty "to have the cover on the machine at all times," as appellant contends. A requirement that defendant cause the shield to be permanently fixed to the mill at all times would be impractical because the shield had to be removed each time the tractor-mill set-up was assembled or disassembled, and each time the mechanism was lubricated. Defendant, who was working in town, could not be present on the farm at all times, and the employee was expected to use his own judgment in deciding when to use the mill. Nor would it be realistic or reasonable to require that defendant be present to personally hand the shield to the employee for use each time the mill was attached to the tractor.

■■ In such circumstances, where the safety appliance must be attached anew each time the machine is put to use and the employer cannot be personally present to see this done, the duty to "provide" a shield reasonably must be held to require the employer to use ordinary case to provide, supply or make available to the employee a protective shield and to see that the employee is *informed* as to the adaptability and purpose of the shield and *instructed* to attach the safety device before using the machine. Considering the evidence in the light of defendant's whole duty, as thus defined, we cannot say as a matter of law that defendant provided, supplied or made a shield available, within the meaning of the requirement. Defendant himself testified that he considered the grain mill a dangerous machine. Although he had seen Lloyd Keeney use the mill, and notwithstanding there were "plenty of occasions" when he could have instructed Lloyd Keeney to "put that on there," *defendant never did inform or tell Keeney that the available shield "belonged to this par-*

ticular mill," or instruct or order him to put the shield on the mill. There is no evidence in plaintiff's case that Lloyd Keeney knew or was ever informed that the drive shaft was supposed to be shielded and that he was expected to attach a shield to the mill, or that there were shields on the farm intended for or adapted to that purpose, or that the shield on the corn picker was interchangeable and could be used or ever was used as a safety device on the grain mill at any time during the period Keeney worked for defendant. Defendant could not say whether the shield was ever attached to the mill during the time Keeney was employed by him. Defendant's brother-in-law, who had "used the grain mill a lot," testified that in the time he had seen and used the mill prior to the date of the fatality there had never been a shield on it, and in answer to the specific question "Did you have occasion to observe the guard being on there on the machine at any time during the employment of Lloyd Keeney prior to his death?" he answered "No, I didn't." A circumstance indicating that Lloyd Keeney did not know that the corn picker shield was adaptable to use on the grain mill is found in the testimony of defendant that he had seen Keeney using the shield for a wholly different purpose than that for which it was intended—"for a trough to feed the grain down into the mixer"; "to funnel the grain as it came out of this auger [on the mill] * * into the feed mixer." As far as the evidence indicates defendant did not protest this improper use of the shield or the failure of Keeney to attach the shield properly as a safety device, but acquiesced therein. The lack of concern on the part of defendant as to the use of the shield is further indicated by his testimony that he did not know where the shield was located on March 17, 1959; did not know on trial date where it was, and "never did look for it." The foregoing constituted substantial evidence of negligence in failing to "provide" deceased with a protective shield for use in the operation of the mill, and the court erred in directing a verdict for defendant on the ground that plaintiff had not made

a submissible case. For similar rulings in other jurisdictions in cases involving failure to provide a farm employee with a proper guard or shield to cover a power take-off, see Von Tersch v. Ahrendsen, Iowa 1959, 99 N.W.2d 287; Johnson v. Kinney, 1942, 232 Iowa 1016, 7 N.W.2d 188, 144 A.L.R. 997, and Harvey v. Palmer, 1956, 179 Kan. 472, 296 P.2d 1053.

Respondent argues that assuming that defendant was negligent, decedent was guilty of contributory negligence as a matter of law; that deceased had more than average mechanical ability; that he was thoroughly familiar with the mechanism, including the protruding alemite fitting on the drive shaft, set screw which stuck out at least ¾ inch, drive shaft, slip clutch and spring, all of which rotated at a high speed, and all of which and the rotation of which were open and obvious if the machine was operated without its protective shield; that defendant had warned deceased on several occasions about the drive shaft; that the operation of the machine without a shield was a patent danger; that Keeney, "by the use of his eyes and ears, and common sense, could not help but be aware of and recognize the great danger to himself in the operation of such grain mill without the protective shield"; that a protective shield was present and available for Keeney's use, but he failed to use the shield.

The gist of respondent's argument is that because the danger was open and obvious, deceased was negligent "in the operation of such grain mill *without the protective shield*. The operation of the machine *without the shield* was a patent danger." Respondent also argues that "In the case at bar, if the grain mill was not reasonably safe, it was the fault of Lloyd Keeney in *failing to properly assemble* it before using." (Emphasis ours.) We cannot declare deceased guilty of contributory negligence as a matter of law for failing to attach the shield because plaintiff's evidence did not show that deceased knew the mill came equipped with a shield and that the

original shield was on or about the premises and available, and did not show that deceased knew that the shield on the corn picker was adaptable to the grain mill and could be used thereon as a protective device.

▬▬ "It is well established that in actions of this sort, where there are no eyewitnesses, it is frequently impossible to prove the facts and circumstances surrounding the injury, and especially the absence of contributory negligence. On account of this, the courts are more liberal in allowing the questions of the negligence of the defendant and of the contributory negligence of the plaintiff to go to the jury upon slight evidence." Newell v. St. Louis Transfer Co., 205 Mo.App. 543, 226 S.W. 80, loc. cit. 82. Furthermore, there is a presumption that a decedent was not guilty of negligence contributing to his death where, as here, there were no eyewitnesses or direct evidence of conduct which would indicate negligence, Lyon v. Southard, Mo.Sup., 323 S.W.2d 785; cases in 10 Mo.Digest, Death, ▬▬▬ 25 C.J.S. Death § 80b(1), p. 1207, unless all of the physical facts conclusively establish negligence on the part of the deceased. American Veterinary Laboratories v. Glidden Co., 227 Mo.App. 799, 59 S.W.2d 53, 58. Respondent argues deceased's negligence is a jury question unless from all the evidence and the reasonable inferences to be drawn therefrom, viewed in the light most favorable to plaintiff, the only reasonable conclusion is that deceased was negligent and that his negligence was a proximate cause of his death. Kickham v. Carter, Mo.Sup., 314 S.W.2d 902, 908. It does not appear from direct and positive testimony in plaintiff's case that deceased had more than average mechanical ability, or that he was thoroughly familiar with the mechanism, including the alemite fitting and protruding set screw, or that defendant had

warned deceased about the drive shaft. The testimony that deceased had more than average mechanical ability and had been warned came not from plaintiff's witnesses but from defendant himself and is to be disregarded because on this review we are obliged to disregard defendant's evidence which does not aid plaintiff's case. It could be inferred from the evidence that deceased was familiar with the mechanism and knew about the alemite fitting and protruding set screw, but such an inference would be an inference of fact favorable to defendant, which we may not draw in determining whether the court should have directed a verdict for defendant, for it is our duty "to make every inference of fact in favor of the party offering the evidence, which a jury might, with any degree of propriety, have inferred in his favor, * * *. But the court is not at liberty, in passing on such demurrer [now motion for a directed verdict], to make inferences of fact in favor of the defendant, to countervail or overthrow either presumptions of law or inferences of fact in favor of the plaintiff; that would clearly be usurping the province of the jury." Buesching v. St. Louis Gaslight Co., 73 Mo. 219, 231. So we eliminate from consideration the element of knowledge of deceased about the existence of the alemite fitting and protruding set screw or of "thorough familiarity" with the mechanism.

Respondent cites cases [1] for the proposition that an employee who by reason of age, experience, and familiarity with machinery realizes and knows of the existence of a dangerous condition which is open and obvious, and who voluntarily takes an affirmative step (such as inserting his hand in a machine to remove an object while the machine was in operation, without disconnecting the power, or placing himself in a dangerous position and then manipulat-

1. Chisenall v. Thompson, 363 Mo. 538, 252 S.W.2d 335; Crandall v. McGilvray, Mo.Sup., 270 S.W.2d 793; Fulwider v. Trenton Gas, Light & Power Co., 216 Mo. 582, 116 S.W. 508; Van Bibber v. Swift & Co., 286 Mo. 317, 228 S.W. 69; Kilmer v. Connecticut Zinc Corporation, 206 Mo.App. 346, 227 S.W. 861; and Blankenship v. St. Joseph Fuel Oil & Mfg. Co., 360 Mo. 1171, 232 S.W.2d 954.

ing the engine in such a way as to occasion injury, or voluntarily exposing himself to the danger of explosion, knowing that oil is dripping into a smoldering fire, or voluntarily and unnecessarily placing himself in a dangerous position when there are other reasonably safe places he could take) is guilty of contributory negligence as a matter of law. These cases are inapplicable here. We have eliminated the factors of deceased's wide experience and great familiarity with machinery, and there is no evidence that deceased took any affirmative step, or voluntarily and unnecessarily came in contact with the drive shaft.

■ Even where there is evidence of knowledge on the part of the employee of the danger of his place of work, or of the machinery with which he is provided, the question whether his acts and conduct in the light of such knowledge constitute contributory negligence is a question of fact for the jury, unless the evidence is such that all reasonable men would conclude that he was guilty of negligence which contributed to the casualty. He will not be declared guilty of contributory negligence as a matter of law unless the danger is so glaring, open and obvious as to threaten immediate and almost certain injury, or that a man of ordinary prudence would not attempt to occupy the place or use the machinery. Morris v. Atlas Portland Cement Co., 323 Mo. 307, 19 S.W.2d 875; Messing v. Judge & Dolph Drug Co., 322 Mo. 901, 18 S.W.2d 408, 416; Jewell v. Kansas City Bolt & Nut Co., 231 Mo. 176, 132 S.W. 703; Edmondson v. Hotel Statler Co., 306 Mo. 216, 267 S.W. 612; Hoffman v. Peerless White Lime Co., 317 Mo. 86, 296 S.W. 764. In Ossenberg v. Monsanto Chemical Works, Mo.App., 218 S.W. 421, where a servant was put to work in a place where he knew there was danger (working near a rapidly revolving shaft) but had no knowledge of a protruding set screw which caused his injury (by coming in contact with his clothing and hurling him about the shaft and upon a platform), the St. Louis Court of Appeals said, 218 S.W. loc. cit. 422: "[I]t

cannot be held as a matter of law that he was guilty of contributory negligence in undertaking to perform the task assigned to him in the manner in which he attempted to perform it; for it cannot be said as a matter of law that, in the absence of knowledge of the danger from the protruding set screw, a reasonably prudent man would not have undertaken to perform the work in such manner." And in Andybur v. National Pigments & Chemical Co., Mo.App., 24 S.W.2d 1069, the same court refused to declare a plaintiff guilty of contributory negligence who, as an oiler, placed a ladder 10 inches away from a revolving and unguarded shaft which caught his overalls and threw him to the ground. Plaintiff said he knew the shaft was dangerous. The court said, 24 S.W.2d loc. cit. 1072: "[F]or us to say, as a matter of law, that plaintiff was guilty of contributory negligence, we would have to say that he was required to exercise the very highest degree of care. This he was not required to do, but only to exercise ordinary care for his own safety."

In this case we cannot conclusively say, as a matter of law, that the danger of becoming entangled in the revolving shaft was so glaring, open or obvious as to threaten almost certain injury to deceased while operating the grain mill, or that no prudent person would have continued to work without a shield. There was no threat of immediate and certain injury unless the employee came into physical contact with the revolving shaft. There is a void space in the proof which plaintiff would have had to make in order to convict deceased of contributory negligence as a matter of law. Plaintiff's evidence did not show that it was necessary to be in close or dangerous proximity to the shaft in order to run the mill; or that deceased actually worked in close proximity to the shaft; or that deceased affirmatively, voluntarily or unnecessarily moved into contact with the shaft; or why or how deceased's jacket made contact with the revolving set screw. Deceased may have fallen against the revolving shaft accidentally, or as a result of a momentary

loss of consciousness by fainting, or otherwise. For us to say flatly that the contact resulted from negligence on the part of deceased, in the absence of any evidence on the point, would be to engage in rank speculation and conjecture on a question upon which the minds of reasonable men may differ.

The judgment is reversed and the cause remanded for a new trial.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.